McCann, J.
For the Plaintiff: Erin Bradbury, Esq. (Philips, Silver, Taiman, Aframe & Sinrich).
For the Defendant Lumbermans Mutual: William T. Bogaert, Esq., Kathleen E. Kelly, Esq. (Wilson, Esler, Moskowitz, Edelman & Dicker).
For the Defendant Huntington, Goodnow, Connors, Inc.: John A. Wickstrom, Esq.[1]
FACTUAL BACKGROUND
The Plaintiff, Atlas Metal Products Co., Inc. (“Atlas”) is a metal fabrication company that has occupied space at 312 Main Street, Hudson, Massachusetts since 1977. That properly has been owned by R&R Realty Trust (“R&R”) since 1977. Two men were the driving force behind both Atlas and R&R, Robert Hoaglund and Robert Berman. Hoaglund was the *100 president of Atlas until his retirement in 1988, when Robert Berman’s wife Cookie took over as president. Berman was vice-president of Atlas. Both Hoaglund and Berman served as the trustees and beneficiaries of R&R Realty Trust. At no time did R&R ever employ any employees.
In 1995, Berman contacted his insurance broker, Huntington, Goodnow, Connors, Inc., also a defendant in this action, about obtaining an employee dishonesty policy (“EDP”). The policy application provided by Atlas indicated that:
Atlas had two officers and twenty-eight employees, and
Atlas was audited quarterly.
On the basis of that information, Lumbermans Mutual Casualty Company (“Lumbermans”) issued an EDP to Atlas.
In 1996, Atlas hired a secretary named Elizabeth Kunst. At the direction of Peter Grant, then the accounting manager for Atlas, Ms. Kunst began keeping the books not only for Atlas but also for R&R. It appears that Mr. Grant delegated the bookkeeping functions for both Atlas and R&R to Ms. Kunst with the knowledge and approval of Mr. Berman and Mr. Hoaglund, both of whom were at that time the trustees and beneficiaries for R&R. Atlas and R&R maintained separate checking accounts from at least 1966 to 1999. Each company’s bank statement would be mailed to Atlas and then opened by Peter Grant.
Sometime in 1998, Ms. Kunst began writing checks to herself out of funds from both Atlas and R&R. The missing funds were uncovered in 1999 when Mr. Berman’s suspicions were aroused when the figures Ms. Kunst provided for the surplus funds to R&R seemed unusually low. Mr. Berman brought in an accountant who confirmed that the funds were in fact missing and that Ms. Kunst appeared responsible for the missing money. Ms. Kunst was subsequently fired from Atlas and escorted from the building. She later gave a voluntary statement to the Hudson Police and shortly after she committed suicide.
In her signed confession to the Hudson Police, Ms. Kunst characterizes the money she took as loans she intended to repay. A breakdown of the funds show that Ms. Kunst wrote checks to herself totaling $64,588.79 from R&R, and $4,826.80 from Atlas. Ms. Kunst’s statement to the police indicates full awareness on her part that she took funds belonging to R&R. Lumber-mans has indemnified Atlas for its claim of loss of $4,826.80 and denied the loss sustained by R&R for $64,588.79.
The EDP from Lumbermans lists only Atlas and not R&R as the Named Insured. The pertinent parts of the policy are as follows:
EMPLOYEE DISHONESTY COVERAGE FORM A— BLANKET COVERAGE
We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.
ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS
3.a. “Employee Dishonesty” in paragraph A.2 means only dishonest acts committed by an “employee,” whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:
1) Cause you to sustain loss; and also
2) Obtain financial benefit... for
a) The “employee;” or
b) Any person or organization intended by the “employee” to receive that benefit.
GENERAL EXCLUSIONS
We will not pay for loss as specified below:
3. Indirect Loss: Loss that is an indirect result of any act or “occurrence” covered by this insurance including but not limited to, loss resulting from:
b. Payment of damages of any type for which you are legally liable. But we will pay compensatory damages arising directly from a loss covered under this insurance.
GENERAL CONDITIONS
14. Ownership of Property; Interests Covered: The property covered under this insurance is limited to property:
a. That you own or hold; or
b. For which you are legally liable.
However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.
The parties are before the court on the Plaintiff Atlas’ Motion to Strike the confession of Elizabeth Kunst, the Defendant Lumbermans’ Motion for Summary Judgment and the Plaintiff Atlas’ Cross Motion for Summary Judgment. The Plaintiff additionally seeks damages under Ch. 93A and Ch. 176D for false and deceptive practices.
DISCUSSION
Plaintiffs Motion to Strike
Atlas seeks to strike the confession Ms. Kunst made to the Hudson Police shortly before she committed suicide. Ms. Kunst made a voluntary statement to the Hudson Police Department with full awareness that her statements could result in possible criminal charges being filed against her. The voluntary nature of the statement is evidenced by the fact that she was free to leave the police station after her statement and in fact did so. Ms. Kunst’s statement to the police is admissible as an exception to hearsay as a declaration against her own penal interest. To be admissible, the declarant must be unavailable, the statement must be based on her own first-hand knowledge, and there *101 must be an awareness on the part of the declarant that her statement exposes her to possible criminal action. Ms. Kunst’s confession meets all these requirements and is therefore admissible.
Atlas filed a complaint in the following four counts against Lumbermans: (I) Breach of Contract; (II) Breach of Covenant of Good Faith and Fair Dealing; (III) 93A and 176D; and (IV) Negligence. An answer of denial was filed with several affirmative defenses.
Defendant Lumbermans’ Motion for Summaiy Judgment
Lumbermans issued an Employee Dishonesty Policy (EDP) to Atlas for “loss of, and loss from damage to, Covered Property, resulting directly from the covered cause of loss.” Covered properly is defined as money, securities, and tangible property.
Lumbermans moves for summaiy judgment on the ground that Atlas has not sustained a direct loss covered by the EDP. Atlas responds that Atlas was “legally liable” for R&R’s funds and therefore Lumber-mans must indemnify Atlas not only for the amount taken from Atlas’ account, but also for $64,588.79 which was taken from R&R’s account.
Interpretation of an insurance policy is a question of law to be decided by the court. When interpreting insurance contracts, no part of the contract should be considered in isolation from the rest of the provisions of the contract. If provisions can be given definite or certain legal meanings, then the policy is not ambiguous. Disagreement between parties over the meaning of a term is not enough to make a provision ambiguous or to create a question of fact. However, if the court determines that ambiguity exists in a provision of the policy, that provision should be interpreted in favor of the insured.
Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Evidence is to be viewed in the light most favorable to the non-moving party, but in the absence of any proof, the non-moving party is not entitled to the assumption that the facts necessary to create a genuine issue could or would be forthcoming at trial.
As an initial matter, the burden of proof is with the insured to show that it has sustained a loss within the meaning of the insurance policy. In this case, the EDP issued by Lumbermans indemnified Atlas against direct property loss. Atlas must therefore show that the funds in question were taken from Atlas’ authorized accounts and that Atlas’ assets were diminished. This court concludes that Atlas has not suffered a direct loss within the meaning of the EDP and that there is no coverage for the amount in dispute.
Direct Loss Under the EDP
In order to trigger coverage under the EDP, the assets of Atlas must be diminished as a result of the actions of the late Ms. Kunst. The loss must be real and direct, not hypothetical or theoretical. Lumber-mans contends that the money taken from R&R’s account is not a direct loss to Atlas and is therefore not compensable. Further, Lumbermans contends that even if it were true that Atlas is legally liable to R&R for the stolen funds, this would still at best constitute an “indirect loss” which is plainly excluded under the EDP.
The undisputed facts establish that $64,588.79 was taken from R&R’s account. The critical issue is whether the unauthorized acts of Ms. Kunst resulted in a direct diminishing of Atlas’ assets. Atlas cites this provision of the insurance contract as evidence of coverage for the claim:
GENERAL CONDITIONS; 14: Ownership of Property; Interests Covered:
The property covered under this insurance is limited to property:
a) That you own of hold; or
b) For which you are legally liable.
However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.
To find coverage under the EDP, Atlas must overlook the last two sentences of part 14. Additionally, this provision must also be read in connection with the General Exclusions under the policy, which explicitly states “we will not pay for . . . indirect loss: Payment of damages of any type for which you are legally liable.”
Atlas tries to avoid the plain wording of the policy in two ways. First, Atlas claims it paid R&R for its loss under a global settlement that was part of an arbitration proceeding between R&R and Atlas. Atlas argues that repayment of the loss created a direct loss to Atlas that is compensable under the EDP.
Reimbursement to R&R by Atlas
It may be the case that Atlas is vicariously liable to R&R for the actions of Ms. Kunst. It is unclear from the terms of the global settlement that Atlas in fact repaid R&R. But even if one assumes for the purposes for the motion for summaiy judgment that Atlas repaid the loss, it is not enough to trigger a loss under the EDP. In cases involving policies with the same or very similar wording, courts have determined that reimbursement by the Insured to a harmed third party is an indirect loss only which is not covered, not a direct loss within the meaning of the policy. F.D.I.C. v. Nat’l Union Fire Ins. Co. of Pittsburgh, PA, 205 F.3d 66, 76, 2000, Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois, 962 F.Sup. 956, 961, 1996, Fireman’s Fund. *102 Ins. Co. v. Special Olympics International, Inc., 249 F.Sup.2d 19, 28, 2003.
Bailment of R&R’s Bank Statements by Atlas
Secondly, Atlas contends that under a management contract with R&R, Atlas “assumed control” of R&R’s property, including cash, checks, R&R’s checkbook and bank accounts. The management contract, Atlas contends, gave rise to a bailment by which R&R’s funds became the property of Atlas such that the loss of funds from R&R’s bank account was a direct loss attributable to Atlas and therefore compensable under the EDP.
The elements of bailment are:
delivery of personal property by one person to another to be used for specific purpose
acceptance of such deliveiy
an express or implied contract that the purpose will be carried out and that the properly will then be returned or dealt with as directed.
Even if one assumes for the purposes of the motion for summary j udgment that Atlas is correct and that bank statements can properly be the objects of a bailment, Atlas’ argument still must fail. Although R&R’s bank statements were mailed to Atlas, at all times the money in the bank account remained in the name of R&R. At all times R&R had access and control over the money in the bank account, so no bailment as to the funds ever occurred.
Further, to accept Atlas’ premise would be to take an EDP which explicitly insures against direct property loss and convert it into a liability policy where any employees can take the property of a third party in the course of their employment and render the employer liable, regardless of whether the employer had any interest in the property itself. This, by the terms of the EDP, Atlas cannot do.
Manifest Intent on the Part of Elizabeth Kunst
The last provision of the policy which Atlas must contend with is the policy definition of “employee dishonesty.” This two-part definition requires that the employee act with the manifest intent to:
cause the named insured to sustain a loss, and
obtain a financial benefit for the employee or someone intended by the employee to receive that benefit.
Manifest intent is explicit in the absence of a third party who might sustain the loss as a result of the employee’s dishonest act. Courts have been willing to infer the requisite manifest intent when the inescapable, inevitable result of the dishonest act is that the employer alone must sustain the loss. Lynch Properties, Inc., 962 F.Sup. at 962; F.D.I.C. v. Nat’l. Union Fire, 203 F.3d at 72.
The voluntary confession of Ms. Kunst eliminates any possibility that Atlas can prove that her actions had the necessary manifest intent. Rather, her confession makes only too clear that she acted with the full knowledge and appreciation that she was taking funds from the accounts of R&R. To overlook the requirement that Ms. Kunst’s action reveal the manifest intent to take the funds from Atlas would again result in the transformation of a policy that insures against property loss into a policy that insures against potential liability. The express language of the policy prevents this.
The Plaintiffs claim for damages under Ch. 93A and Ch. 176D also accordingly fail for the reasons enumerated previously.
Order
Plaintiff Atlas Metal Product Co.’s Motion to Strike is denied. The Motion for Summary Judgment by defendant Lumbermans Mutual Casually Company is allowed as to all counts against it, Counts I, II, III and IV. Plaintiff Atlas Metal Product Co.’s Cross Motion for Summary Judgment is denied.

 A Stipulation of Dismissal as to the Defendant Huntington, Goodnow, Connors, Inc. as to Counts V, VI, VII and VIII was filed January 31, 2003. A Motion for Separate and Final Judgment was allowed January 31, 2003.